[ORAL ARGUMENT NOT SCHEDULED]

Nos. 24-7122 & 24-7123

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

AMAALA JONES-BEY, *et al.*,

*Appellees*,

v.

TERENCE SUTTON, *et al.*,

*Appellants.*

On Appeal from the United States
District Court for the District of Columbia

---

## OPPOSITION TO INTERVENOR HYLTON'S
## MOTION FOR SUMMARY AFFIRMANCE

---

*s/Daniel S. Crowley*

Daniel S. Crowley, Bar No. 989874
CROWLEY SO, LLP
1800 M Street, NW, Ste. 850 S
Washington, D.C. 20036
Tel: (202) 232-1907
Fax: (202) 232-3704
dcrowley@crowleyso.com

*Attorneys for Appellant Terence Sutton*

## BACKGROUND

This case follows the first-of-its-kind prosecution and conviction of a police officer, Terence Sutton, for the death of Karon Hylton-Brown. Prosecutors alleged that Sutton attempted to stop and then chased Hylton-Brown over traffic violations. *United States v. Sutton*, No. 21-CR-598-PLF-01 (ECF 1 at ¶ 10). Although the Constitution allows police officers to pursue motorists who flee traffic stops, prosecutors argued that the General Orders of the Metropolitan Police Department do not. *Id*. at ¶ 8. As Hylton-Brown fled on a moped, he drove at low speeds the wrong way down one-way streets and through alleyways. *Id*. at ¶ 11. He then exited an alley into oncoming traffic and was struck by a passing civilian vehicle. *Id*. at ¶ 13. Hylton-Brown, who was not wearing a helmet, died from the collision.

Although the case began with a federal civil rights investigation, no civil rights charges were filed. Instead, Sutton was charged with second-degree murder on the theory that in pursuing Hylton-Brown, Sutton consciously disregarded the extreme risk that Hylton-Brown would suffer bodily injury. *Id*. at ¶ 29.

Neither the prosecution nor the defense was able to identify a single case in which a police officer had been criminally prosecuted for common law homicide where the officer was not alleged to have violated the constitutional rights of the decedent. *U.S. v. Sutton* (ECF 449 at 11). Nor did either party identify a single case in this district where a police officer or a civilian was charged with second

degree murder where there was no physical contact between the defendant and the decedent.  *U.S. v. Sutton* (ECF 632 at 5).  The presiding judge, the Honorable Paul L. Friedman, acknowledged that other second-degree murder cases in this district "were all different from this one."  *U.S. v. Sutton* (Tr. Sep. 12, 2024, at 84:12-19), attached as Exhibit 1.

Sutton was convicted of second-degree murder, obstructing a federal investigation, and conspiring to obstruct a federal investigation.  Judge Friedman sentenced Sutton to 66 months of incarceration.  *Id*. at 99:6-13.  However, without any motion from the defense, and over the government's request for briefing, Judge Friedman granted Sutton release pending his appeal.  *Id*. at 101:25-102:3. Judge Friedman explained that Sutton had raised "substantial questions" for appeal, including Judge Friedman's decision to not allow Sutton to raise a "constitutional policing" defense, *i.e*., that Sutton could not be convicted of second-degree murder if he complied with the Constitution and Supreme Court precedent governing police pursuits.  *Id*. at 102:11-103:15.  Sutton appealed his conviction on October 10, 2024.

**Plaintiff Amaala Jones-Bey's Complaint**

While the criminal case was pending, Amaala Jones-Bey, the mother of Hylton-Brown's child and personal representative of Hylton-Brown's estate, filed this action alleging that Sutton did violate Hylton-Brown's constitutional rights.

Jones-Bey alleges that Officer Sutton and others tried to speak with Hylton-Brown who then rode away on a moped.  ECF 26 at ¶¶ 20-35.  She claims the officers racially profiled Hylton-Brown and then illegally chased him with the purpose of knocking him off the moped.  *Id*. at ¶ 17.  According to the amended complaint, this is a "pattern and practice" across the Metropolitan Police Department.  *Id*. at ¶ 49.  Jones-Bey alleged the officers attempted to force Hylton-Brown into another object or off the roadway, leading to the deadly collision.  *Id*. at ¶ 58.

Jones-Bey brought an excessive force claim under the Fourth Amendment, a substantive due process claim under the Fifth Amendment, and various state law claims.  She sued under the D.C. Wrongful Death Act, D.C. Code § 16-2701, and D.C.'s Survival Statute, D.C. Code § 12-101.

**Intervenor's Complaint**

Under the Wrongful Death Act, any loss of financial support suffered by the decedent's next of kin may be awarded as part of the damages for a claim brought by the personal representative.  D.C. Code § 16-2701(b).  Hylton-Brown's mother, Karen Hylton, intervened in this case to establish her damages.  She claims that her son "often helped her with regular expenses by giving her cash," and that if he

were still alive, "he would have continued to financially support his mother."[1] ECF 32-1 at ¶¶ 87, 88.

Hylton's complaint in intervention alleges that Sutton "had evidently developed the view that Karon was a member of the 'Kennedy Street Crew,' a small and informal organization that engaged in small scale drug dealing in Brightwood Park."[2] *Id*. at ¶ 27.  Hylton further alleges that "[o]n several occasions in the past, Sutton had stopped Karon, [his brother], and others in the community and seized their money and other personal property."[3] *Id*. at ¶ 29.

---

[1]    At the time of his death, Hylton-Brown was wearing an ankle monitor ordered by a court in Montgomery County, Maryland, to enforce a protective order prohibiting him from contacting Hylton.  He was awaiting trial for violently assaulting his mother and for violating an earlier protective order.  *Maryland v. Karon Hylton-Brown,* No. 3D00407277 (Montgomery Cnty. D. Ct. Feb. 2, 2020).

[2]    The Kennedy Street Crew is a violent criminal gang.  Thirteen of its members were indicted on charges including conspiracy to commit drug trafficking, possession of firearms in furtherance of drug trafficking, possession of firearms by persons convicted of a crime, assault with a deadly weapon, and conspiracy to commit money laundering.  All but one have pled guilty or otherwise been convicted.  *See Two Members of Kennedy Street Crew Sentenced for Fentanyl Trafficking, Money Laundering*, U.S. Attorney's Office (Sep. 13, 2024), https://www.justice.gov/usao-dc/pr/two-members-kennedy-street-crew-sentenced-fentanyl-trafficking-money-laundering.

[3]    Hylton-Brown had been arrested several times for various drug offenses and his property—drugs, scales, and money—were confiscated during the arrests.  *See e.g.*, *United States v. Hylton*, D.C. Super. Ct. Case No. 2018 CMD 011616 (pled guilty to distribution and possession with intent to distribute); *United States v. Hylton*, D.C. Super. Ct. Case No. 2019 CMD 002782 (pled guilty to possession with intent to distribute, possession of drug paraphernalia).

According to Hylton's complaint, "Sutton saw that Karon was riding a moped on the sidewalk and was not wearing a helmet," which she admits was a "legally valid reason to stop Karon." *Id*. at ¶ 39. But Hylton says her son fled because he "feared that the officers were planning to seize his property, or worse." *Id*. at ¶¶ 40-41. Hylton says the pursuit reached speeds of "40 miles per hour," and that when Hylton-Brown "pulled out onto Kennedy Street, he was immediately struck by an oncoming SUV." *Id*. at ¶¶ 50, 54.

Hylton's complaint alleges that Sutton violated Hylton-Brown's substantive due process rights under the Fifth Amendment and was negligent under D.C. law. The stated basis for the constitutional claim is that Sutton "chased Karon through a residential neighborhood, exhibiting extreme recklessness in disregard of an obviously extreme risk of death or serious injury, while their only legally valid reason for effecting a stop was their observance of two minor traffic violations." *Id*.

**Motion to Dismiss**

Sutton timely moved to dismiss Jones-Bey's complaint. He argued that all counts should be dismissed for failure to state a claim and that the constitutional claims were also barred by the doctrine of qualified immunity. ECF 61. With respect to the due process claim, Jones-Bey argued in her opposition that she adequately pled Sutton's intent to cause physical harm to Hylton-Brown and that

6

Sutton somehow orchestrated the collision with the passing vehicle. ECF 67 at 11-13. Hylton likewise argued that the "complaints" plausibly alleged Sutton's "intent to harm Hylton-Brown." ECF 69 at 1.

The district court dismissed Jones-Bey's excessive force claim because Sutton never touched or otherwise seized Hylton-Brown. ECF 105 at 9-10. The court also dismissed the state law claims against Sutton for failure to state a claim. *Id*. at 22-26.

The only claim against Sutton to survive dismissal was Jones-Bey's Fifth Amendment due process claim. In permitting that claim to proceed, the district court relied on *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998), where the Supreme Court granted police officers qualified immunity and said that "chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability." *Id*. at 11-14.

The court ruled that Jones-Bey's complaint did not allege that Sutton acted with an intent to physically harm Hylton-Brown. *Id*. at 13. However, the court found that Jones-Bey did allege, together with Hylton, that Sutton pursued Hylton-Brown for the purpose of stealing his money or more generally to "harass" him. *Id*. at 14. Without citing any existing precedent, the court held that those allegations constituted an intent to "worsen the legal plight" of Hylton-Brown, and therefore, adequately pled a violation of the Fifth Amendment. *Id*. at 11-14. The

Court then denied Sutton qualified immunity, holding that *Lewis* put all reasonable police officers on notice that the alleged conduct was unconstitutional. *Id.*

Sutton timely appealed the district court's order. ECF 121. Hylton then filed a motion asking the district court to find the appeal frivolous and to maintain partial jurisdiction over the appeal. ECF 127. In that motion, Hylton argued for the first time that she and Jones-Bey had pled that Sutton's subjective intent during the pursuit was to harass and steal from Hylton-Brown. *Id.* Hylton also argued that Sutton's appeal was merely a stalling tactic. *Id.* The district court denied Hylton's motion in a minute order. Oct. 4, 2024, Min. Ord. Hylton now raises those same arguments in a motion for summary disposition.

## ARGUMENT

## I.     LEGAL STANDARD.

### A.     Motion for Summary Disposition.

Summary affirmance is appropriate "only where the moving party has carried the heavy burden of demonstrating that the record and the motion papers comprise a basis adequate to allow the fullest consideration necessary to a just determination." *Cascade Broadcasting Group, Ltd. v. FCC*, 822 F.2d 1172, 1174 (D.C. Cir. 1987) (internal quotation marks and citation omitted). "A party seeking summary disposition bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987). "To summarily affirm an order of the

district court, this court must conclude that no benefit will be gained from further briefing and argument of the issues presented." *Sills v. Bureau of Prisons*, 761 F.2d 793-94 (D.C. Cir. 1985).

### B.     Due Process Under the Fifth Amendment.

The Fifth Amendment ensures that "no person shall … be deprived of life, liberty, or property, without due process of law[.]"  U.S. CONST. AMEND V.  The Supreme Court has "emphasized time and again that 'the touchstone of due process is protection of the individual against arbitrary action of the government.'"  *Lewis*, 523 U.S. at 845 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).  The Due Process Clause safeguards fundamental procedural fairness and prohibits "the exercise of power without any reasonable justification in the service of a legitimate governmental objective."  *Id.*

A substantive due process violation occurs when "executive action" is "arbitrary or conscience shocking, in a constitutional sense."  *Id.* at 847.  "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense[.]'"  *Id.* at 846 (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992)).  Although "conscience shocking" does not carry a precise definition, it requires that the conduct is "intended to injure in some way unjustifiable by any governmental interest."  *Id.* at 849.  *Daniels v. Williams*, 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied

9

to *deliberate* decisions of government officials to deprive a person of life, liberty, or property…") (emphasis in original).

When a fleeing suspect is killed during a police pursuit, but no seizure occurs, the case is analyzed as a due process violation, rather than one of excessive force under the Fourth Amendment. In *Lewis*, the Supreme Court explained that violations of general orders and allegations of recklessness or even conscious disregard for the fleeing driver's safety are not enough to establish a due process violation. *Lewis*, 523 U.S. at 854. The Court held "that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Id.*

## C.     Qualified Immunity.

Qualified immunity is an affirmative defense that "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citations omitted). The doctrine presents a high bar for plaintiffs; "[w]hen properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 335 (1986)).

To determine whether an officer is immune, the Supreme Court has created a two-part test. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). First, the Court must ask whether, "in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right." *Id.* (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). If so, the Court must then determine whether the right at issue was clearly established. *Id.* at 201.

For a right to be clearly established, it "must be sufficiently clear 'that every reasonable official would have understood what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). This requires that the violation is established "'not as a broad general proposition,' but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id.* at 665. "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' *ibid.*, meaning that 'existing precedent ... placed the statutory or constitutional question beyond debate.'" *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *al–Kidd,* 563 U.S. at 741). "Existing precedent is sufficient to place a constitutional question beyond debate and to defeat qualified immunity only if it is controlling authority in the relevant jurisdiction, or if a robust consensus of cases of persuasive authority in

the Court of Appeals has settled the question." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 719 (3d Cir. 2018) (internal citations and quotation marks and alterations omitted).

Importantly, qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511,526 (1985) (emphasis in original). "Thus, it is important to resolve the immunity question at the earliest possible stage in litigation." *Young v. Scales*, 873 A.2d 337, 341 (D.C. 2005). A "district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision'" because it "conclusively determines that the defendant must bear the burdens of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal quotation marks, citations, and alterations omitted). For that reason, a denial of a motion to dismiss based on qualified immunity is immediately appealable. *Id.; Behrens v. Pelletier*, 516 U.S. 299, 307 (1996).

As the Honorable Ketanji Brown Jackson explained, "[a]t the motion to dismiss stage, a plaintiff must allege sufficient facts to establish that the defendants are *not* entitled to qualified immunity." *Patterson v. United States*, 999 F. Supp. 2d 300, 311 (D.D.C. 2013). This means the complaint itself "must establish that the official violated a right of the plaintiff's that is protected by the Constitution, and existing precedent must have placed the statutory or constitutional question beyond debate[,] such that a reasonable official would have understood prior to acting that

his conduct violates that right." *Id*. (internal citations and quotation marks omitted).

## II.   THE DISTRICT COURT'S RULING IS NOT SO CLEARLY CORRECT THAT EXPEDITED ACTION IS JUSTIFIED.

This Court should deny Hylton's motion because the district court's denial of qualified immunity was not so clearly correct that no further briefing or argument are necessary. *Taxpayers Watchdog, Inc.*, 819 F.2d at 297; *Sills*, 761 F.2d at 793-94. It is undisputed that no court has ever found a police officer liable under circumstances that resemble those alleged here. Hylton's reliance on an inverse reading of the Supreme Court's ruling in *Lewis*, coupled with a novel interpretation of the phrase, "worsen the legal plight," do not amount to a "clearly established" standard that all reasonable police officers would know and understand.

### A. Allegations of Harassment and Intent to Steal do not Establish a Due Process Violation or Defeat Qualified Immunity.

Although Hylton addresses it last, Sutton's primary contention on appeal is that allegations of intent to harass or steal from a motorist do not meet the extraordinarily high standard of alleging government action that is "arbitrary or conscience shocking, in a constitutional sense." Further, even if this Court did rule, for the very first time, that the allegations do meet that standard, it cannot find the "question beyond debate" such that it was "clearly established" at the time of the alleged violation.

13

To be clear, the question presented in this case is not, as Hylton claims, whether the constitution "allows" a police officer to engage in a dangerous chase for theft or to harass a suspect.  Qualified immunity does not ask whether an officer's conduct was permissible; it asks whether the officer's conduct violates a clearly established constitutional right.  *Saucier*, 533 U.S. at 201.  "Not all conduct that is improper or morally wrong [] violates the Constitution."  *Jessop v. City of Fresno*, 936 F.3d 937, 943 (9th Cir. 2019).  *See Lewis*, 523 U.S. at n.14 ("To say that due process is not offended by the police conduct described here is not, of course, to imply anything about its appropriate treatment under state law."); *Souza v. Pina*, 53 F.3d 423, 427 (1st Cir. 1995) ("A government official's plainly 'despicable and wrongful,' [] conduct does not necessarily give rise to a recoverable federal civil rights claim against the official").

As explained above, to show a "clearly established" violation, Hylton must show that "'the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' [] meaning that 'existing precedent ... placed the statutory or constitutional question beyond debate.'"  *Sheehan*, 575 U.S. at 611 (quoting *al–Kidd,* 563 U.S. at 741).  But here, the only case Hylton cites as establishing those contours is *Lewis*, where the Supreme Court *granted* police officers qualified immunity and said that "chases

with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability." *Lewis,* 523 U.S. at 854.

The district court held—and Hylton does not challenge—that neither Jones-Bey nor Hylton adequately pled that Sutton intended to physically harm Hylton-Brown. Instead, Hylton asks the Court to find that an officer with a "legally valid reason to stop" a suspect, but who nevertheless acts with an intent to harass or steal from them, acts to worsen the suspect's "legal plight" and thereby violates the constitution. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred" and rejecting "any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved").

It is undisputed that no court has ever found a substantive due process violation under circumstances like those alleged here. Hylton does not cite a single case in her motion where an officer was found liable at all. Nor does she cite a single case that applies the phrase, "worsen their legal plight."

Hylton and the district court are mistaken to view *Lewis* as sufficiently "particularized" to place the constitutional question beyond debate under the facts of this case. *See al-Kidd*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality"). *Lewis*, like this

15

case, involved an attempted stop for a traffic violation. *Lewis*, 523 U.S. at 836-37. The motorcyclist fled and the officer pursued, in violation of several aspects of the police department's General Order on police pursuits. *Id*. The motorcyclist tried to turn sharply, tipped over, and the officer was unable to stop before striking and killing one of the riders. *Id*.

The Supreme Court engaged in a lengthy analysis of the spectrum of culpability to determine whether the "conscience shocking" standard was satisfied. The Court first rejected a negligence standard, reasoning that due process "is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Id*. at 848 (quoting *Daniels*, 474 U.S. at 332). The Court also considered the complaint's allegation of "recklessness, gross negligence and conscious disregard for [Lewis's] safety." *Id*. at 854. Although the Ninth Circuit found this sufficient to establish a substantive due process claim, the Supreme Court did not. *Id*.

That is why Sutton's counsel, and counsel for the District of Columbia, argued that the Court's decision in *Lewis* required the Court to grant immunity to the officers. ECF 60 at 8-11; ECF 61 at 9-12. It is likely also why the U.S. Attorney's Office, which opened a civil rights investigation, charged Sutton with second-degree murder and *not* any constitutional violation. Moreover, while counsel for Jones-Bey and Hylton opposed dismissal, neither claimed in their

16

oppositions that Sutton's intent to rob or harass Hylton-Brown satisfied the "legal plight" language in *Lewis*. ECF 67, 68, 69. They argued only that the complaints sufficiently alleged an intent to cause physical harm. *Id*. It is not reasonable to expect a police officer to know what a series of lawyers who thoroughly researched qualified immunity did not know. *See O'Neal v. Cazes*, 257 F. App'x 710, 713 (5th Cir. 2007) (expressing uncertainty about "whatever the Supreme Court meant by 'worsen their legal plight'").

Hylton also finds fault with Sutton's reference, in a filing below, to the Ninth Circuit's decision in *Jessop*. That case involved a § 1983 action alleging a Fourth Amendment violation when police officers executing a search warrant stole money from the plaintiff. *Jessop*, 936 F.3d at 937. The Ninth Circuit said that "any theft by police officers—most certainly the theft of over $225,000—is deeply disturbing," but that existing precedent was insufficient to "put the 'constitutional question beyond debate.'" *Id*. at 939 (quoting *al-Kidd*, 563 U.S. at 741). The Court held that "[b]ecause the City Officers could not have known that their actions violated the Fourteenth Amendment's substantive due process clause, they are entitled to qualified immunity." *Id*. at 942.

Hylton argues that *Jessop* is irrelevant because it did not involve a police chase resulting in death. But Hylton does not cite any case involving similar circumstances, either. And that is the point. Hylton has not identified one case

finding a substantive due process violation involving a police chase initiated with an intent to steal from or harass the driver.  More broadly, neither party has identified one case finding a substantive due process violation involving a police chase without an allegation of intent to physically harm the driver.  Nor has either party found a case finding a substantive due process violation based on an allegation that the officer sought to "worsen the legal plight" of the driver.

Finally, Hylton faults Sutton for not arguing below why other "possible motivations," such as harassment for sport, do not constitute an intent to "worsen [a victim's] legal plight."  But Sutton's response is the same: Hylton has not identified one case finding a substantive due process violation involving a police chase initiated for fun or to harass the driver.  *See Graves v. Thomas*, 450 F.3d 1215, 1223 (10th Cir. 2006) (no violation where there was no traffic violation at the time of the stop, the officer had a history of harassing motorists, and officer had said he "was going to get" the motorists before initiating pursuit); *Cruz-Erazo v. Rivera-Montanez*, 212 F.3d 617, 623 (1st Cir. 2000) (claim dismissed where officers engaged in months of harassment and intimidation and pushed one plaintiff, who suffered a miscarriage two days later); *Jackson v. City of Houston*, No. 4:23-CV-00052, 2023 WL 7093031, at *5 (S.D. Tex. Oct. 26, 2023) (practice and policy of racial profiling does not rise "to an intention to 'worsen their legal plight'"); *Philebaum v. Myers*, No. 1:04-CV-218-TS, 2006 WL 335518, at *12

(N.D. Ind. Feb. 13, 2006) (insufficient to claim officer sought to embarrass, cause fear, and intimidate the motorist). If this Court were to accept Hylton's argument, any plaintiff would be able to defeat qualified immunity by simply alleging a bad motive by the defendant officer. *See Whren*, 517 U.S. at 812 ("We flatly dismissed the idea that an ulterior motive might serve to strip the agents of their legal justification").

The Court should deny Hylton's motion because it is not clear, based on Lewis, that the allegations in this case state a clearly established substantive due process violation.

> **B.      Neither Plaintiff nor Intervenor Pled that Sutton Acted with Intent to Harass or Steal from Hylton-Brown.**

As Hylton points out, Sutton argued also below that Jones-Bey's complaint does not even allege that Sutton acted with an intent to steal from or harass Hylton-Brown.

Sutton does not believe that the district court gave a fair reading of the plaintiff's 60-page and 277-paragraph complaint. The only reference to money in the entire complaint is paragraph 56, which alleged:

> The chasing officers, Officer Terrence Sutton, Driver; Carlos Tejera, Ahmed Al-Shrawl, Novick, and Zabavsky engaged in the vehicle pursuit of Karon Hylton without obtaining approval from a Watch Commander or Dispatcher and when Hylton had not committed any felonious act which would justify a Vehicle Pursuits GO-OPS_301 .03, Ill. DEFINITIONS 1. b 2, these 5 officers violated GO-OPS_301 .03 by engaging in a vehicle pursuit with the intention of confiscating Mr.

> Hylton's property including cash for their own illicit purposes, which
> is a known pattern and practice to motorbike riders.

ECF 26 at ¶ 56. For additional support, Hylton now points to an allegation in the complaint attached to her motion to intervene (but not docketed), alleging that "Sutton chased Karon with an intent to illegally seize his property."

Attempting to justify Hylton-Brown's illegal flight by claiming he feared that officers would "confiscate" or "seize" his property is not an allegation of the officer's intent to commit theft. To "confiscate" is to "[t]o appropriate (property) as forfeited to the government," or "[t]o seize (property) by authority of law." Confiscate Definition, *Black's Law Dictionary* (12th Ed. 2024). Police are allowed to confiscate property and MPD officers had previously confiscated Hylton-Brown's property—his drugs, scales, and money—when they arrested him for various drug offenses. *See e.g.*, *United States v. Hylton*, D.C. Super. Ct. Case No. 2018 CMD 011616 (pled guilty to distribution and possession with intent to distribute); *United States v. Hylton*, D.C. Super. Ct. Case No. 2019 CMD 002782 (pled guilty to possession with intent to distribute, possession of drug paraphernalia). *See also* Mot. to Suppress Illegally Obtained Physical Evid., *U.S. v. Hylton*, No. 2019 CMD 002782 (D.C. Super. Ct. April 29, 2019). If Hylton or Jones-Bey meant "steal," their lawyers would have used the word "steal", not "confiscate" and "seize," in their complaints.

Sutton's interpretation of the complaints is confirmed by everything else Jones-Bey and Hylton filed, as well as events that occurred in the criminal case.  In opposition to Sutton's motion to dismiss, Jones-Bey did not claim that Sutton was trying to rob (or harass) Hylton-Brown, Jones-Bey argued that Sutton intended to physically harm him and that he somehow orchestrated the collision with the passing vehicle.  ECF 67, 69.  Hylton did not accuse Sutton of trying to "steal" from (or harass) Hylton-Brown in her opposition, either.  ECF 69.  She argued that the "complaints" plausibly alleged Sutton's "intent to harm Hylton-Brown." *Id*.  It was not until the district court issued its ruling that Jones-Bey and Hylton focused on these issues to save their case.

Had either pled such an allegation, or raised it in their oppositions, Sutton would have asked the district court to take notice of the prior judicial determination that Sutton had no knowledge of Hylton-Brown's money.  As Judge Friedman explained in his order denying Sutton's motion for a new trial,

> I'm also going to preclude testimony and evidence regarding any information learned about Mr. Hylton Brown after the crash occurred. Anything learned about him at the hospital or through the autopsy report, including . . . the fact that he had over three thousand dollars on his person.
>
> This information did not inform Mr. Sutton's state of mind during the conduct in the case.

U.S. v. Sutton, Trial Tr. Oct. 24, 2022, at 9:7-14, attached as Exhibit 2.  *See also*

*U.S. v. Sutton* (ECF 530 at 28) ("[t]he Court excluded information 'learned about

Mr. Hylton-Brown after the crash occurred' – namely, that he was wearing an

ankle monitor and carrying large amounts of cash – because that information could

not have 'informed Mr. Sutton's state of mind' during the pursuit.")

## CONCLUSION

For the foregoing reasons, Terence Sutton respectfully requests that the

Court deny Karen Hylton's motion for summary disposition and issue a schedule

for full briefing and argument on the appeal.

Dated:  October 28, 2024                    Respectfully submitted,


        s/*Daniel S. Crowley*
Daniel S. Crowley, Bar No. 989874
CROWLEY SO, LLP
1800 M Street, NW, Ste. 850S
Washington, D.C. 20036
Tel: (202) 232-1907
Fax: (202) 232-1907
dcrowley@crowleyso.com

*Attorneys for Appellee Terence Sutton*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2) because it contains 4864 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word Times New Roman, 14-point font, a proportionally spaced typeface.

   s/*Daniel S. Crowley*
Daniel S. Crowley

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

   s/*Daniel S. Crowley*
Daniel S. Crowley